NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0946n.06
Filed: December 5, 2005

No. 04-4177

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

RHONDA J. TURPIN,

     Defendant-Appellant.

                                 /

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:    KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  Defendant Rhonda J. Turpin appeals a September 14, 2004 order of the United States District Court for the Northern District of Ohio, the Honorable Lesley Wells presiding, sentencing Defendant in connection with two counts of theft of government funds in violation of 18 U.S.C. § 641.  For the reasons set forth below, we **AFFIRM** the district court's order.

# I.
# BACKGROUND

## A. PROCEDURAL HISTORY

On December 10, 2003, a grand jury indicted Defendant on two counts of thefts of government funds in violation of 18 U.S.C. § 641.

On February 12, 2004, Defendant pled guilty to both counts pursuant to a plea agreement. The plea agreement stated in relevant part:

15. **Criminal History Category.** The parties have no agreement as to the Criminal History Category applicable in this case. Defendant understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office. . . . .

17. **Sentencing Recommendations Not Binding on the Court.** Defendant understands that the recommendations of the parties will not be binding upon the Court, that the Court alone will decide the applicable sentencing range, whether there is any basis to depart from that range, and what sentence to impose. Defendant further understands that once the Court has accepted Defendant's guilty plea, Defendant will not have the right to withdraw such a plea if the Court does not accept any sentencing recommendations made on Defendant's behalf or if Defendant is otherwise dissatisfied with the sentence.

(J.A. at 54-55). During the plea hearing, the Assistant United States Attorney ("AUSA") stated that the criminal history category would be determined by the court following completion of the pre-sentence report by the probation office. The AUSA opined that the criminal history category would be on the higher end because of Defendant's "extensive criminal history." (J.A. at 109.)

The district court explained to Defendant that the court had not determined Defendant's criminal history, and that criminal history would play a role in Defendant's sentence. Defendant's counsel estimated that based on the information available to him, Defendant's "criminal history may

be somewhere between a four and five, with five being the highest." (J.A. at 118.) The court then explained the possible range of punishment corresponding to a "four" and "five" criminal history category in relation with a "ten" and "twelve" offense level. The court read the indictment to Defendant, and Defendant pled guilty. The court scheduled a sentencing hearing for May 3, 2004.

On March 22, 2004, the probation office sent the initial pre-sentence investigation report to the parties. The report stated that Defendant had a total of twenty-six criminal history points, which equated to a criminal history category of six. Defendant did not object to the report.

On April 21, 2004, the court granted Defendant's motion to postpone the sentencing hearing because of a scheduling conflict. The court rescheduled sentencing for May 24, 2004.

On April 27, 2004, the probation office sent a revised pre-sentence investigation report.

On May 3, 2004, Defendant's counsel informed the probation office that he had several objections to the pre-sentence investigation report. Specifically, counsel objected to points connected with seven prior convictions; counsel felt that Defendant's criminal history category should be four. The probation office disagreed with Defendant's counsel, and it issued a second revised pre-sentence investigation report that noted the objections of Defendant's counsel.

On May 19, 2004, Defendant's counsel, Donald Butler, filed a motion to withdraw as counsel for Defendant. The ground for his motion was the erosion of the attorney-client relationship.

On May 19, 2004, the court granted Mr. Butler's motion, and Michael Goldberg entered an appearance as Defendant's counsel. Defendant's new counsel then stated his intention to file a motion to withdraw Defendant's plea. He filed such motion on June 7, 2004, on the ground that Defendant was misled by her previous counsel as to her criminal history calculation. Defendant

3

claimed that in private conversations, her previous counsel assured her that certain convictions would not be included in the computation of her criminal history, so that her criminal history category would be two or three.

On July 14, 2004, the court denied Defendant's motion to withdraw her plea and vacate her conviction. The court found that Defendant failed to raise a "fair and just reason" in support of her motion. Defendant knew that there were no guarantees with respect to her criminal history calculation, and she knew there were no guarantees with respect to her actual sentence as a result. The court also found that Defendant had extensive experience with the criminal justice system, so that she should have understood the nature of her plea agreement. The court also found that there was a substantial delay between Defendant's notice of the criminal history stated in the initial pre-sentence investigation report and her motion to withdraw her plea. Lastly, the court found that Defendant had not maintained her innocence during the proceedings, and this fact weighed against granting Defendant's motion.

On September 14, 2004, the court sentenced Defendant to twenty-seven months of imprisonment for each count, with the sentences to run concurrently. The court also ordered three years of supervised release and monetary penalties in the amount of the restitution required.

On September 23, 2004, Defendant filed a timely notice of appeal.

**B.    FACTS**

Defendant is a resident of Ohio. According to the government's allegations, from September 1999 to May 2002, Defendant received Housing Assistance Payment checks. She received these checks in the name of "Ethel White," the purported landlord of a property, on behalf of tenant "Cleo

Turpin." In actuality, Defendant owned the property, and she was not entitled to receive the Housing Assistance Payment checks.

According to the government's allegations, from September 1999 to August 2002, Defendant received Housing Assistance Payment checks on behalf of her daughter, knowing that her daughter was not eligible for such assistance.

## II.
## DISCUSSION

### A.  DEFENDANT'S GUILTY PLEA WAS KNOWING, VOLUNTARY, AND INTELLIGENT.

#### 1.  Standard of Review

The issue of whether a plea was knowing, voluntary, and intelligent is a legal question that this Court reviews *de novo*. *United States v. Jones*, 403 F.3d 817, 822 (6th Cir. 2005) (quoting *United States v. Walker*, 160 F.3d 1078, 1095-96 (6th Cir. 1998)).

#### 2.  Analysis

Defendant entered into her guilty plea knowingly, voluntarily, and intelligently.

##### a.  Legal Framework

A guilty plea is more than just an admission of guilt; it is a waiver of the constitutional right to a trial by judge or jury. *Brady v. United States*, 397 U.S. 742, 748 (1970). As a result, a defendant must enter a guilty plea knowingly, voluntarily, and intelligently. *Id.* The district court must verify "that the defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *United States*

*v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005) (citing *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988)). In a simple case, however, the district court may fulfill its responsibility by reading the indictment and allowing the defendant to ask questions about the charge. *United States v. Valdez*, 362 F.3d 903, 908 (6th Cir. 2004).

### b. Application to this case

This is a simple case; it involves two counts of theft of government funds, and the manner in which the crimes were committed was straightforward. *See supra.* As a result, the district court fulfilled its duty when it read the indictment to Defendant, and Defendant pled guilty.

Even under a more detailed analysis, the result would be the same. The heart of Defendant's claim with respect to this issue is that she did not understand "the consequences of the guilty plea." *Webb*, 403 F.3d at 379. In support of this argument, Defendant relies on her previous attorney's misstatements as to his estimate of Defendant's criminal history category. As Defendant views the situation, "[t]he choice between a plea and trial cannot be knowingly and voluntarily made where a defendant does not have proper information regarding her *potential sentence*." (Def.'s Br. at 20 (emphasis supplied).)

The flaw in Defendant's argument is that Defendant in fact had the proper information regarding her potential sentence. Paragraph 2 of Defendant's plea agreement stated the maximum penalty allowed for her crimes. Paragraph 15 stated that the parties had not agreed to a criminal history category. Paragraph 17 stated that Defendant's counsel's recommendations were not a guarantee, that the court had the ultimate authority in deciding the sentence, and that Defendant could not withdraw her plea if she was dissatisfied with the sentence she received.

At the plea hearing, the AUSA reiterated that the criminal history category had not yet been determined, and he stated he felt that the criminal history category would "be toward the higher end of the criminal history chart." (J.A. at 109.) Likewise, the district court spent a great deal of effort explaining that it did not know Defendant's criminal history category, and that Defendant's sentence would vary based upon that information. Defendant's counsel guessed that her criminal history category would be four or five; however, the court never accepted this estimate as definitive.

Although Defendant may not be pleased with the sentence she received in light of her previous attorney's advice, she knew the maximum penalty she could receive, she knew that her sentence would be based on her criminal history category, she knew that her criminal history category was unknown at the time, and she knew that she could not withdraw her plea if she was dissatisfied with the sentence. In short, Defendant was well aware of the potential sentence, even if she is unhappy with the actual sentence.

**B.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA.**

### 1.     Standard of Review

This Court reviews the district court's decision denying Defendant's motion to withdraw her plea for abuse of discretion. *United States v. Denkins*, 367 F.3d 537, 544 n.3 (6th Cir. 2004) (referencing *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998)).

### 2.     Analysis

The district court did not abuse its discretion when it denied Defendant's motion to withdraw her guilty plea.

#### a.     Legal Framework

Federal Rule of Criminal Procedure 11(d) states: "A defendant may withdraw a plea of guilty . . . after the court accepts the plea but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal."

In giving content to "a fair and just reason," this Court has relied on several non-exclusive factors:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). No one factor is controlling. *Id.*

### b.    Application to This Case

With respect to the first two factors, the district court found that substantial time had elapsed between Defendant's guilty plea, February 12, 2004, and her motion to withdraw, June 7, 2004. In addition, the district court found that substantial time had elapsed between the time Defendant should have been on notice of her criminal history category, March 22, 2004, and her motion to withdraw.

The Court agrees with the district court's reasoning in that Defendant does not explain why she waited until June 7, 2004 to make a motion to withdraw, when she found out on March 22, 2004 that her criminal history category was six, and not the criminal history category of two or three her previous counsel was estimating in private. Defendant never denies receiving the March 22, 2004 pre-sentence investigation report; she was therefore on notice that the court was going to use a

criminal history category of six to assess her sentence. Defendant should have filed a motion to withdraw immediately thereafter; her purported dependence on counsel does not excuse her inaction.

With respect to the third factor, we agree with the district court that Defendant has not consistently maintained her innocence. At her plea hearing, Defendant admitted to the facts underlying the crimes. Her counsel specifically stated, "She is not disputing what she did. I mean, that's why she signed [the plea agreement], because she acknowledged her participation in the acts she was involved in here." (J.A. at 114.) During her sentencing hearing, Defendant stated, "And I apologize to the government, to Section 8, to HUD, for anything I did." (J.A. at 150.) Defendant did not assert her innocence at any time during this hearing. Only in her memorandum in support of her motion to withdraw did Defendant assert her innocence.

This Court recognizes that the circumstances surrounding a plea hearing and a sentencing hearing may have impeded Defendant's ability to maintain her innocence. The problem, however, is that at only one point, in her memorandum in support of her motion to withdraw, does Defendant assert her innocence. This is not a consistent maintenance of innocence.

Neither Plaintiff nor Defendant addressed the fourth and fifth factors.

With respect to the sixth factor, we agree with the district court that Defendant has had extensive experience with the criminal justice system, a fact that Defendant does not dispute.

With respect to the seventh factor, we agree with Defendant that the United States has not suffered prejudice with respect to its ability to try this case. All evidence for this case continues to be available, and nothing in the record suggests any other form of prejudice.

From these factors, this Court cannot say that the district court abused its discretion when it denied Defendant's motion to withdraw her plea. Defendant did not explain why she waited to make the motion, Defendant has not consistently maintained her innocence, and Defendant has extensive experience with the criminal justice system. From these facts, the district court was well within its power when it denied Defendant's motion.

Most importantly, we have specifically stated that "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement." *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990). Even if Defendant's previous attorney gave erroneous advice as to his estimate of Defendant's sentence, Defendant could not withdraw her plea. The rationale is that the district court, by explaining that Defendant's sentence would depend on her criminal history category, by explaining that such category had not yet been calculated, and by explaining the court had the ultimate power in deciding the sentence, made clear to Defendant that her counsel's erroneous estimate would have no weight in its sentencing decision. *See United States v. Cinnamon*, 112 Fed. App'x 415, 419 (6th Cir. 2004) (unpublished).

## C.   THIS COURT SHOULD NOT HEAR DEFENDANT'S SIXTH AMENDMENT INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

### 1.   Preservation of the Issue

At heart, Defendant's claim is one of ineffective assistance of counsel; however, Defendant never squarely addresses the contours of such a claim as delineated by *Strickland v. Washington*, 466 U.S. 668 (1984), even though she does cite the case and the appropriate inquiry in her brief to

this Court. Defendant does not even cite to the appropriate case for ineffective assistance of counsel in connection with guilty pleas, *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Moreover, the Court does not usually entertain ineffective assistance of counsel claims on direct review. *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001) (citing *United States v. Jackson*, 181 F.3d 740, 747 (6th Cir. 1999)). The rationale behind this policy is that the record from the lower court is usually insufficient for this Court to decide such a claim, because the focus of the record is not on the quality of counsel's representation. *Id.* (citing *United States v. Aguwa*, 123 F.3d 418, 423 (6th Cir. 1997)). Instead, this Court has held that a defendant should usually pursue an ineffective assistance of counsel claim through collateral review. *Id.* (citing *United States v. Long*, 190 F.3d 471, 478 (6th Cir. 1999)). If, however, trial counsel's ineffectiveness is so apparent from the record that additional fact-finding is unnecessary, then this Court should hear the ineffective assistance of counsel claim on direct review. *Massaro v. United States*, 538 U.S. 500, 508 (2003).

We do not believe that the instant case is one where the ineffectiveness of Defendant's previous counsel was so obvious from the record as to preclude the necessity of additional fact-finding. The Court agrees with Defendant that her previous counsel's error in estimating her criminal history is reflected in counsel's objections to the first revised pre-sentence investigation report. On the other hand, the record also shows that Defendant's previous counsel estimated her criminal history to be four or five, instead of the two or three she claims counsel advised her in private. The record is simply inconclusive as to whether Defendant's previous counsel was indeed ineffective, and further development of the record is necessary.

11

As an aside, one may believe that because Defendant did not have a "fair and just" reason to withdraw her guilty plea, she also does not have a valid claim for ineffective assistance of counsel. This is incorrect; the two inquiries are subtly distinct. Defendant could not withdraw her guilty plea because she knew that her sentence could be different than that estimated by counsel. *See supra*.

On the other hand, to establish an ineffective assistance of counsel claim, Defendant must show: (1) her counsel's representation fell below an objective level of reasonableness, and (2) there is a reasonable probability that, but for her counsel's errors, she would not have pled guilty and would have insisted on going to trial. *Lockhart*, 474 U.S. at 58-59. In other words, a defendant who relies on her counsel's erroneous sentence estimate and takes a plea agreement may not withdraw from the plea agreement, as she knew her counsel's sentence estimate could differ from the sentence actually delivered by the court. She can, however, still make an ineffective assistance of counsel claim in that her counsel's sentence estimate fell below an objective standard of reasonableness, and but for her counsel's erroneous sentence estimate, she would not have taken the plea.

## D. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT DID NOT CONDUCT AN EVIDENTIARY HEARING IN CONNECTION WITH DEFENDANT'S MOTION TO WITHDRAW HER GUILTY PLEA.

### 1. Standard of Review

This Court reviews the district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *See supra*. If factual matters bearing directly on the plea are in controversy, Defendant is entitled to an evidentiary hearing on such matters. *United States v. Triplett*, 828 F.2d 1195, 1198 (6th Cir. 1987). If the district court does not hold an evidentiary hearing to which

Defendant is entitled, this is an abuse of discretion. *See, e.g.*, *United States v. Joslin*, 434 F.2d 526, 531 (D.C. Cir. 1970).

**2.      Analysis**

The district court did not abuse its discretion when it did not conduct an evidentiary hearing in connection with Defendant's motion to withdraw her plea. As explained *supra*, even if the district court were to assume that Defendant's previous counsel gave her incorrect advice concerning her probable sentence, this fact was not a valid reason for Defendant to withdraw her plea. This is true because Defendant knew that her criminal history category had not yet been decided, and she knew that her sentence would be based on this figure. In other words, the district court did not need to hold an evidentiary hearing, because even if Defendant proved ineffective assistance of counsel, she still could not withdraw her plea.

**III.**
**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court order.