**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0478n.06

No. 09-4083

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Jul 14, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| CHRISTIAN PEARSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: BATCHELDER, Chief Circuit Judge; SUHRHEINRICH and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Christian Pearson appeals the district court's judgment and sentence. We affirm.

I.

The events giving rise to this case began when a police investigation revealed that Christian Pearson was selling narcotics in Cincinnati, Ohio. After conducting a series of drug buys from Pearson at and around his residence at 470 Dayton Street, federal agents obtained a warrant to search Pearson's home. There, they found plastic baggies, digital scales, $3,445 in cash, a loaded .357 magnum Smith and Wesson revolver, 2.22 grams of marijuana, and approximately 3.7 grams of crack cocaine. Pearson was given *Miranda* warnings and admitted that he had engaged in the sale of crack cocaine and purchased the Smith and Wesson revolver for $100 for protection. He was indicted on six counts of trafficking in drugs and on four counts related to possession of a firearm.

Pearson thereafter signed a plea agreement. He agreed to plead guilty to Counts 8 (knowingly possessing with the intent to distribute crack cocaine in a measurable amount in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C)) and 9 (possession of a firearm in furtherance of the drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)) of the indictment in exchange for which the government would dismiss the remaining counts. The government also agreed that if Pearson fully cooperated, it would recommend that he receive a term of imprisonment of 240 months. Pearson, in the plea agreement, acknowledged, among other things, that he "fully underst[ood] that sentencing guideline stipulations and recommendations set forth [were] not binding on the Court, and d[id] not include any matters regarding his criminal history"; he also acknowledged at the plea hearing that he had discussed with his counsel how the Guidelines could apply to his case.

The probation department recommended 262 months' imprisonment, 202 months for Count 8 and 60 months for Count 9. The district court found that the career offender guideline overstated Pearson's criminal history and determined that the appropriate criminal history score was a level VI. The court further found that the otherwise applicable offense level in Count 8 was a level 24 under the Guideline's conversion table. It then went on to determine that the 100 to 1 crack/powder ratio was inappropriate and reduced Pearson's offense level from 24 to 22. Finally, it reduced Pearson's offense level three more points for acceptance of responsibility, giving him an offense level of 19. The court ultimately imposed a sentence of 72 months' imprisonment on each count, for a total of 144 months' imprisonment, to be followed by five years of supervised release.

Pearson timely appeals.

II.

We "review all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard."[1]  *Gall v. United States*, 552 U.S. 38, 41 (2007).  This "reasonableness" review has two components: procedural and substantive. A sentence may be considered procedurally unreasonable where the court fails to properly calculate the Guidelines range, treats the Guidelines as mandatory, fails to consider the 18 U.S.C. § 3553(a) factors, selects a sentence based on an unreasonable determination of the facts, or fails to adequately explain the sentence.  *United States v. Battaglia*, 624 F.3d 348, 350-51 (6th Cir. 2010).  A sentence may be considered substantively unreasonable if the district court "selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor."  *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

III.

Pearson argues that the district court abused its discretion because:  (a) it adopted the findings

---

[1]The government argues that we should review Pearson's sentence for plain error because Pearson did not raise any of his sentencing objections in response to the district court's *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), question.  *Id.* at 872 (explaining that "district courts . . . [must] ask the parties whether they have any objections to the sentence just pronounced that have not previously been raised").  But it is not clear that the district court asked the *Bostic* question.  All it said was:  "I think you want to say something to me, Christian . . . . What do you have to say?" *Cf. United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007) (concluding that the question "Do you have anything further for the record, Mr. Canady?" failed to satisfy *Bostic*); *United States v. Clark*, 469 F.3d 568, 570 (6th Cir. 2006) (concluding that the question "Anything else, Ms. Goode?" failed to satisfy *Bostic*).  We need not decide the question, however, because we affirm even under the less deferential standard of review.

of the presentence report ("PSR") that included conduct underlying the dismissed charges to determine his offense level; (b) it used an uncounseled misdemeanor to add one point to his criminal history total; (c) it failed to consolidate two of his prior convictions for the purpose of calculating his criminal history; and (d) it failed to find his guilty plea involuntary after he voiced confusion about the court's use of conduct underlying the dismissed charges in determining his sentence. We address these claims in turn.

A.

First, Pearson contends that the district court's consideration of the conduct underlying the dismissed charges to increase his offense level violated his rights under the Sixth Amendment. That is not so. In *United States v. White*, 551 F.3d 381 (6th Cir. 2008), we explained that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking to other facts, including acquitted conduct, when selecting a sentence within that statutory range." *Id.* at 385; *cf. also United States v. Conway*, 513 F.3d 640, 646 (6th Cir. 2008) (concluding that "a defendant who enters a plea agreement like this one waives any constitutional right to a jury determination of guilt or sentencing facts – so long as the ultimate sentence falls within the statutory range.").[2] Accordingly, Pearson's

---

[2] *See also* U.S.S.G. § 6B1.2(a) ("[A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted."); *id.* § 5K2.21 ("The court may depart upward to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason . . .").

argument is without merit.

Second, Pearson claims that the district court's consideration of the conduct underlying the dismissed charges "did not comply with the spirit of the plea agreement" because "[t]he plea agreement does not list any quantity of drugs . . . . [and] the statement of facts attached to the plea agreement . . . states only the 3.71 grams of crack cocaine[,] . . . ." That argument also fails.

In *Conway*, a defendant similarly claimed that "[e]ven if the sentence complied with the letter of the plea agreement, . . . it did not comply with the spirit of the agreement. How after all did he benefit from the agreement . . . if one of the counts dropped in return for his guilty plea became the source of an enhancement?" 513 F.3d at 644. We explained, however, that "[t]he best place to look for the spirit of an agreement . . . is not at what it might have said but at what it did say" – that is, "[i]t bars the government from seeking to convict him on any of the three dismissed counts, not from using the conduct underlying those counts to increase his sentence." *Id.*

The same reasoning applies here. What matters most for purposes of ascertaining the "spirit" of a plea agreement is not what the plea agreement *might* have said, but what the plea agreement *did* say. In this case, the plea agreement provided that the government would drop the remaining four counts and "recommend to the court that the defendant receive a term of imprisonment of twenty (20) years." The plea agreement did not contain any promise by the government that it would refrain from asking the district court to increase Pearson's sentence based on the conduct underlying the dismissed charges. Thus, the district court's consideration of that conduct was not against the spirit of the plea agreement.

Third, Pearson notes that "[t]he district court based its drug-quantity determination on the presentence report" and he asserts that "[t]here does not appear to be any testimonial evidence in the record regarding the quantities of drugs used in the calculations in the presentence report." We generously construe this as an argument that the district court did not have a sufficient basis for finding by a preponderance of the evidence the amount of drugs involved in the conduct underlying the dismissed charges.

Under Federal Rule of Criminal Procedure 32(i)(3)(B), "the district court at sentencing [must] rule on any disputed portion of the presentence report or other controverted matter." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007) (internal quotation marks and citation omitted). This means that "if the defendant raises a dispute to the presentence report, the 'court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.'" *United States v. Ross*, 502 F.3d 521, 531 (6th Cir. 2007) (internal quotation marks and citation omitted). Rather, "the district court must *actually find facts*, and it must do so by a preponderance of the evidence." *White*, 492 F.3d at 416. "We require this literal compliance with Rule 32(i)(3)(B) because it 'enhanc[es] the accuracy of the sentence and the clarity of the record.'" *Ross*, 502 F.3d at 531 (citation and internal quotation marks omitted).

If the facts are not in dispute, however, the district court may rely on drug quantities listed in the PSR. *Ross*, 502 F.3d at 531. Our decision in *United States v. Treadway*, 328 F.3d 878 (6th Cir. 2003) provides a useful example. There, the "district court relied exclusively and entirely on the PSR in sentencing Treadway." *Id.* at 886. Treadway appealed, arguing that this was error. We

- 6 -

held that the district court "properly rel[ied] exclusively on the PSR for drug quantity" because Treadway "never objected, orally or in writing, to the drug quantity calculations contained in the PSR." *Id.* We explained that there was "no reason to require a district court to make independent findings outside the PSR when the facts are undisputed." *Id.* Such is the case here. Because Pearson never objected to the quantity of drugs in the PSR, the district court did not abuse its discretion in relying on those undisputed quantities to determine his sentence.

Fourth, Pearson asserts that "including the dismissed charges rendered his sentence 'greater than necessary' to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)" and thus "substantively unreasonable." However, a properly calculated within-Guidelines sentence, like Pearson's, will be afforded a rebuttable presumption of reasonableness on appeal. *Rita v. United States*, 551 U.S. 338, 350-52 (2007). Pearson has not attempted to rebut that presumption, and we conclude that the sentence was reasonable. *Cf., e.g., United States v. Penney*, 576 F.3d 297, 317 (6th Cir. 2009) ("Penney does not provide us with any reason to doubt the presumption, and we conclude that the district court's sentence was reasonable."); *see also United States v. Liou*, 491 F.3d 334, 339 n.3 (6th Cir. 2007) ("When the appellant challenges a within-Guidelines sentence, it must, of course, present persuasive arguments that the district court erred in its sentencing determination, just as any burden-bearing appellant must.").

B.

Next, Pearson argues that the "Sentencing Judge erred when it adopted the criminal history findings of the presentence report which used an uncounseled misdemeanor to add one point to Mr.

Pearson's criminal history total." This argument is without merit. "The Supreme Court has directly addressed this issue in the Sentencing Guidelines context, noting that it is 'constitutionally permissible to consider a prior uncounseled misdemeanor conviction' in enhancing a defendant's criminal history." *United States v. Duckro*, 466 F.3d 438, 448 (6th Cir. 2006) (quoting *Nichols v. United States*, 511 U.S. 738, 748 (1994)).

C.

Pearson also contends that the "Sentencing Judge erred when it adopted the criminal history findings of the presentence report which used separated convictions [for resisting arrest and trafficking in cocaine] that should have been consolidated to add additional points to Mr. Pearson's criminal history." We disagree. Under U.S.S.G. § 4A1.2(a)(2), "[i]f there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day." Here, the crimes of resisting arrest and trafficking in cocaine were not separated by an intervening arrest; they were charged separately; and Pearson was sentenced for the crimes on different days (8-25-05 and 10-27-05).[3] Thus, the district court correctly declined to consolidate the convictions for purposes of calculating Pearson's criminal history.

D.

Finally, Pearson argues that his guilty plea was involuntary because he did not understand

---

[3]Dkt #04-CRB-34170 includes two charges: (1) obstructing official business, and (2) resisting arrest. Because it does not affect the analysis, and because it is more convenient, we refer to them collectively as "resisting arrest."

that the district court could consider the drug quantities in the dismissed charges as relevant conduct for purposes of imposing a sentence. In accepting Pearson's plea, the district court was required to "verify that [his] plea [was] voluntary and that [Pearson understood] his . . . applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that [he] committed the crime charged." *United States v. Webb*, 403 F.3d 373, 378-79 (6th Cir. 2005); *see* Fed. R. Crim. P. 11. Because *Bostic* applies to sentencing objections, and because Pearson waited until this appeal to assert his claim, he must show plain error: "(1) that an error occurred in the district court; (2) that the error was plain, *i.e.*, obvious or clear; (3) that the error affected [his] substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Alexander*, 543 F.3d 819, 822 (6th Cir. 2008) (citation and internal quotation marks omitted).

Pearson has not shown error, let alone error that was plain. In *United States v. Turpin*, 155 F. App'x 887 (6th Cir. 2005), we rejected a nearly identical argument. There, a defendant asserted that she could not understand "the consequences of the guilty plea" because "her previous attorney[] [misstated] . . . estimate[s] of [her] criminal history category." *Id.* at 890. The claim was that her "choice between a plea and trial [could] not [have been] knowingly and voluntarily made where [she] [did] not have proper information regarding her potential sentence." *Id.* at 891 (internal quotation marks, citation, and emphasis omitted). We explained, however, that the "flaw" in this argument was that she "in fact had the proper information regarding her potential sentence." *Id.* Because the plea agreement "stated the maximum penalty," and made clear that "the parties had not agreed to a

criminal history category" and that "Defendant's counsel's [sentencing] recommendations were not a guarantee [that the court would impose a particular sentence]," we concluded that Turpin's plea was voluntary because she "was well aware of the potential sentence, even if she is unhappy with the actual sentence." *Id.*

This case is substantially the same. Here, the record shows that Pearson knew the charges to which he was pleading guilty, knew that he faced the possibility of a life sentence, and knew that there was no guarantee as to what sentence (other than above the minimum and not death) the district court would impose. Pearson signed a plea agreement stating:

> 1. The defendant will enter a plea of guilty to Counts Eight and Nine of the Indictment. Count Eight charges the defendant with knowingly possessing with the intent to distribute crack cocaine in a measurable amount in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C). *This offense carries a maximum penalty of up to twenty (20) years imprisonment*, a fine of up to $1,000,000.00, a three (3) year term of supervised release, forfeiture and a $100.00 special assessment. Count Nine charges the defendant with possession of a firearm in furtherance of the drug trafficking offense in violation of 18 U.S.C. § 924(c)(1). *Count Nine carries a potential penalty of a mandatory minimum of five (5) years with a potential sentence of life imprisonment* that must be served consecutive to any other sentence imposed upon the defendant, a fine of up to $250,000.00 dollars, a five (5) year term of supervised release, and a $100.00 dollar special assessment.
>
> ***
>
> 3. The defendant understands that the United States Sentencing Guidelines ('U.S.S.G.' or 'Federal Sentencing Guidelines') are advisory and not mandatory. Therefore, *even though the Court is required to consider the Federal Sentencing Guidelines and their application to this case in imposing sentence, sentencing is within the discretion of the Court, and the defendant understands that the Court may or may not choose to impose a sentence based on the applicable sentencing range under the Federal Sentencing Guidelines for the offense charged in the Indictment. The defendant has thoroughly reviewed with his attorney how the Federal Sentencing Guidelines might apply to this case.*

*\*\*\**

13.   *The defendant fully understands that sentencing guideline stipulations and recommendations set forth are not binding on the Court, and do not include any matters regarding his criminal history category which will be determined by the Court after a pre-sentence investigation.*

(Emphases added.)  Further, at the plea hearing, Pearson acknowledged that he had discussed with his counsel how the Guidelines could apply to his case.  Because Pearson was well aware of his potential sentence, his argument that he could not understand the consequences of his guilty plea is without merit.[4]

IV.

For these reasons, we affirm.

---

[4]To the extent that Pearson mentions an ineffective assistance of counsel claim to "preserve any issues regarding of [sic] ineffectiveness of counsel regarding his lack of understanding relating to dismissed charges being used to increase his sentence," that claim is not properly before the court because Pearson has not argued it, *see El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009), and because the record is not sufficiently developed, *see Massaro v. United States*, 538 U.S. 500, 508 (2003); *United States v. Shabazz*, 263 F.3d 603, 612 (6th Cir. 2001).