*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0040p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    *Plaintiff-Appellee,*

 *v.*

            No. 06-4083

JEFFREY T. CONWAY,

    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 05-00208—Algenon L. Marbley, District Judge.

Submitted: November 30, 2007

Decided and Filed: January 23, 2008

Before: ROGERS and SUTTON, Circuit Judges; BERTELSMAN, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Thomas M. Tyack, TYACK, BLACKMORE & LISTON CO., Columbus, Ohio, for Appellant. Gary L. Spartis, ASSISTANT UNITED STATES ATTORNEY, Columbus, Ohio, for Appellee.

_____

## OPINION

_____

 SUTTON, Circuit Judge. After a grand jury issued a four-count indictment against Jeffrey Conway, he pleaded guilty to one of the counts in exchange for which the government dismissed the remaining three counts. At sentencing, the district court enhanced Conway's offense level based in part on the conduct underlying one of the charged, but dismissed, counts. Because the district court did not err, either as a matter of fact or as a matter of law, in sentencing Conway, we affirm.

### I.

 On June 12, 2005, a neighbor noticed that Conway's garage door had been forced open, prompting the neighbor to call the police. Detective Michael Turner responded to the call and performed a protective sweep of the house to ensure that no suspects were inside. Turner eventually

---

[*] The Honorable William O. Bertelsman, Senior District Judge for the Eastern District of Kentucky, sitting by designation.

1

called Conway, who was in North Carolina at the time, to tell him about the burglary. After telling Conway that his house had been "ransacked," Turner "went room [to] room [while] on the phone with [Conway]" to determine if anything was missing. With Conway guiding the way, Turner learned that a television had been stolen and eventually learned that a Sony PlayStation and camera had been stolen as well. During the walk-through, Turner also found an unloaded Remington 880 sawed-off shotgun on top of a trash can in the rear of the garage. Unsure whether the shotgun belonged to Conway or the burglars, Turner "brought up the subject of the sawed-off shotgun and asked [Conway] if it was his." Conway responded that the weapon was his but that it belonged in the bedroom, not the garage. Before concluding the on-premises investigation, Turner also found firearm ammunition in Conway's bedroom.

Conway, it turned out, was a thief himself and had an extensive criminal history, beginning with two separate juvenile-court theft convictions when he was sixteen. Over the eight years between those thefts and the burglary of his house, Conway had committed eight additional crimes and infractions, ranging from driving with a suspended license to carrying a concealed firearm. Conway's concealed-carry offense led to a felony conviction, which prohibited him from possessing a firearm or ammunition. *See* 18 U.S.C. § 922(g). Not only did further investigation confirm that the shotgun was Conway's, but it also confirmed that the shotgun had been stolen. (Perhaps there is some honor among thieves, as the burglars did not steal Conway's stolen shotgun, just his lawfully purchased television, Sony PlayStation and camera.)

A grand jury issued a four-count indictment against Conway, charging him with: (1) unlawful possession of an unregistered shotgun having a barrel of less than 18 inches in length, *see* 26 U.S.C. § 5845(a); (2) felon in possession of a sawed-off shotgun, *see* 18 U.S.C. § 922(g); (3) felon in possession of nine-millimeter and assault-rifle ammunition, *see id.*; and (4) forfeiture of the sawed-off shotgun, *see id.* § 924(d)(1). In connection with a plea agreement, the government dropped counts one, two and four, and Conway pleaded guilty to count three—the felon-in-possession-of-ammunition charge—and agreed to give the shotgun to the government.

At sentencing, Conway objected to the presentence report's recommended 12-level enhancement for possession of a stolen shotgun with a barrel of less than 18 inches long on two grounds: (1) Conway claimed that he had not possessed the shotgun; and (2) the enhancement improperly relied on conduct dismissed under Conway's plea agreement. Rejecting both arguments, the court granted the 12-point enhancement and separately granted a 2-point reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a), and a 1-point reduction for entering a guilty plea, *id.* § 3E1.1(b). Conway's offense level (19) and criminal history category (III) yielded a guidelines range of 37–46 months, and the court imposed a 37-month prison term.

II.

While Conway's appellate brief is a little longer on generalities than it is on specifics, he appears to challenge the district court's possession-of-a-shotgun enhancement on five independent grounds: (1) He did not possess the shotgun; (2) the "relevant conduct" provisions of the sentencing guidelines do not apply to this conduct; (3) the sentencing guidelines preclude courts from enhancing sentences based on charged conduct where the government later dismisses the charge in connection with a plea agreement; (4) the plea agreement in this case barred the enhancement; and (5) the Sixth Amendment barred the enhancement.

*First*, the court did not err, clearly or otherwise, in finding that Conway possessed the sawed-off shotgun. The record showed that the officers recovered the shotgun from Conway's residence and that Conway admitted on two separate occasions that he owned the gun. The only countervailing testimony came from Conway's girlfriend and housemate, Jennifer Alvarez, who said she had not seen the shotgun in the house before the burglary. The quantity of the government's evidence and,

most pertinently, the superior quality of that evidence, *see McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007), sufficed to permit the district court to conclude that Conway possessed the sawed-off shotgun.

*Second*, the "relevant conduct" provisions of the sentencing guidelines apply to Conway's possession of the shotgun. The guidelines define "relevant conduct" as actions that are "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). Because the offense of conviction (a felon in possession of nine-millimeter and assault-rifle ammunition) bears considerable similarity to the alleged relevant conduct (a felon in possession of a weapon), because the government showed that officers discovered—in addition to the nine-millimeter and assault-rifle ammunition—shotgun ammunition for which Conway was not charged and because the offenses occurred at the same time and at the same place (and in Conway's house, no less), the district court could fairly find that Conway's possession of a sawed-off shotgun should be treated as relevant conduct. *See id.* § 1B1.3, cmt. n.9(B); *see also United States v. Hill*, 79 F.3d 1477, 1482 (6th Cir. 1996) (looking to "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses") (internal quotation marks, brackets and citations omitted).

*Third*, the sentencing guidelines permit district courts to apply the "relevant conduct" provisions to charged, but dismissed, conduct—such as Conway's possession of the shotgun. A federal statute suggests as much. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). Several provisions of the sentencing guidelines confirm the propriety of such an enhancement. *See* U.S.S.G. § 6B1.2(a) ("[A] plea agreement that includes the dismissal of a charge or a plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted."); *id.* § 5K2.21 ("The court may depart upward to reflect the actual seriousness of the offense based on conduct . . . underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason . . . ."); *see also id.* § 1B1.3 cmt. n.3 (noting that "multiple counts of conviction are not required" for the relevant conduct enhancement to apply).

Not surprisingly, given the existence of these provisions, several of our cases permit this precise form of enhancement. *See United States v. Dunlap*, 209 F.3d 472, 477 n.10 (6th Cir. 2000) ("[C]riminal activities linked to the crime of conviction which are proved at sentencing by a preponderance of evidence should be punished as 'relevant conduct,' even if such misconduct had been uncharged, or charged in a count of dismissal . . . ."); *see also United States v. Hough*, 276 F.3d 884, 897–98 (6th Cir. 2002); *United States v. Cross*, 121 F.3d 234, 243 & n.9 (6th Cir. 1997); *United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994); *United States v. Fouse*, No. 05-1847, 2007 WL 2962536, at *6 (6th Cir. Oct. 10, 2007); *United States v. Rogers*, No. 97-1978, 1998 WL 879587, at *2 (6th Cir. Nov. 25, 1998).

*Fourth*, even though Conway had ample notice (from the guidelines and the case law) that the dismissed charges could be used against him at sentencing, the plea agreement says nothing that would bar this type of enhancement. The agreement says that the sentencing court has "jurisdiction and authority to impose *any sentence within the statutory maximum* set forth for the offense to which the Defendant pleads guilty." (emphasis added). It says that "the Court has not yet determined a sentence." It says that "any estimate of a probable sentencing range that the Defendant may have received, or may receive in the future . . . is a prediction, not a promise, and is not binding." And it never says that the sentencing court may not use conduct underlying the dismissed charges in calculating his sentencing range under the guidelines. Conway, in short, got what he bargained for—a sentence well below the 10-year statutory maximum (he was sentenced to 37 months), that

otherwise complied with the terms of the plea agreement and that lay within the district court's sentencing discretion.

Even if the sentence complied with the letter of the plea agreement, Conway suggests that it did not comply with the spirit of the agreement. How after all did he benefit from the agreement, he points out, if one of the counts dropped in return for his guilty plea became the source of an enhancement? The best place to look for the spirit of an agreement, however, is not at what it might have said but at what it did say. And what this agreement says does nothing to further Conway's case: It bars the government from seeking to convict him on any of the three dismissed counts, not from using the conduct underlying those counts to increase his sentence. Nor can Conway tenably argue that he did not benefit from the plea agreement. Consistent with the agreement, he became eligible for, and ultimately received, a 3-point reduction in his offense level for accepting responsibility and entering a guilty plea—to say nothing of sparing himself a trial on all four counts and a potentially higher sentence. The reduction changed his guidelines range from 51–63 months to 37–46 months and thus reduced the bottom of his guidelines range by 27%—perhaps not the benefit he hoped for when he entered into the agreement but a benefit nonetheless.

Not only did Conway receive some benefits from the agreement and not only was he on notice that the sentencing court could rely on the charged, but dismissed, conduct in sentencing him, but Rule 11 of the Federal Rules of Criminal Procedure also gave him ample bases for trying to negotiate a different agreement—if that is what he wanted and if that is what he could have convinced the government to do. Rule 11(c) authorizes three types of plea agreements:

> (A) where the government agrees that it will "not bring, or will move to dismiss, other charges," Fed. R. Crim. P. 11(c)(1)(A);

> (B) where the government agrees to "recommend, or agree[s] not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court)," *id.* 11(c)(1)(B); and

> (C) where the government agrees "that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement)," *id*. 11(c)(1)(C).

While the parties used a subsection (A) agreement here, the salient point is that Conway was free to argue that he would enter a plea agreement only on the condition that it was a Rule 11(c)(1)(C) agreement and that the government and court would not consider his possession of the shotgun in sentencing him. Had the court refused to accept such an agreement, it would have been required to give Conway the opportunity to withdraw the plea. *See* U.S.S.G. § 6B1.3 ("If the court rejects a plea agreement [entered under 11(c)(1)(A) or (C)] the court must . . . (a) inform the parties that [it] rejects the plea agreement; (b) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and (c) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated."); *see also Cross*, 121 F.3d at 243 n.8 (noting that the rule currently codified at Federal Rule of Criminal Procedure 11(c)(1)(C) "allows the parties to avoid any uncertainty by agreeing to a specific sentence or sentencing range. If the court accepts such an agreement, it cannot impose a sentence beyond this range."); *United States v. Kemper*, 908 F.2d 33, 37 (6th Cir. 1990). In the face of these realities, one cannot say that Conway lacked notice that his sentence could be enhanced based on the dismissed charge or that

defendants in his situation lacked any basis for seeking a plea agreement that would take dismissed conduct off the sentencing table.

*Fifth*, this sentence did not violate the Sixth Amendment. None of the conventional bases for invoking the Sixth Amendment applies. The district court did not violate any prohibitions on judicial factfinding in sentencing Conway because it found sentencing facts only in connection with applying an *advisory* guidelines system. *See United States v. Booker*, 543 U.S. 220, 233 (2005). And the district court, the record shows, appreciated the advisory nature of the guidelines.

That leaves a less conventional theory—that the Sixth Amendment prohibits courts from enhancing sentences based on charged, but dismissed, conduct. Noting that our court recently granted en banc review in *United States v. White*, 503 F.3d 487 (6th Cir. 2007), *reh'g en banc granted, op. withdrawn*, 2007 U.S. App. LEXIS 28902 (6th Cir. Nov. 30, 2007), which will consider whether the Sixth Amendment allows sentencing courts to rely on *acquitted* conduct in enhancing a sentence, *see United States v. Watts*, 519 U.S. 148 (1997), Conway maintains that a judge's reliance on dismissed conduct presents a constitutional issue of equal magnitude. We do not agree. In contrast to the defendant in *White*, Conway has not been acquitted of anything. He thus has no jury verdict to point to as evidence that the conduct underlying the dismissed counts could not be—or should not be—relied upon by a judge at sentencing. For that reason alone, sentencing based on dismissed conduct stands on far firmer ground than sentencing based on acquitted conduct. *See United States v. Baird*, 109 F.3d 856, 864 (3d Cir. 1997); *see also United States v. Ruffin*, 997 F.2d 343, 345 (7th Cir. 1993).

But there is a broader problem with this argument. The central premise of most plea agreements is that they *waive* the defendant's Sixth Amendment right to a jury trial, not that they vindicate it. Consistent with that premise, the plea agreement in this case makes it clear that the sentencing judge will determine what Conway's sentence will be and will determine whether he possessed the shotgun. It notes that Conway "is aware that, in light of *United States v. Booker*, 125 S.Ct. 738 (2005), the United States Sentencing Guidelines are advisory" and that Conway "is aware that the Court has jurisdiction and authority to impose any sentence within the statutory maximum" for the offense to which he pleaded guilty. It then notes that Conway "is contesting that he had any ownership or possession of said firearm," leaving no doubt that one of the issues that the court would have to decide was whether Conway possessed the shotgun. In contrast to the defendant who vindicates his Sixth Amendment right to a jury trial by contesting the indictment, by putting the government to its proof and by obtaining an acquittal, a defendant who enters a plea agreement like this one waives any constitutional right to a jury determination of guilt or sentencing facts—so long as the ultimate sentence falls within the statutory range.

Conway also cannot have it both ways. He cannot credibly argue that he is entitled to certain benefits in the plea agreement premised on judicial factfinding (*e.g.*, eligibility for the 3-point reduction for acceptance of responsibility and entering into a guilty plea) but can be spared certain risks in the plea agreement premised on judicial factfinding (*e.g.*, eligibility for a 12-point enhancement based on possession of the shotgun). *See United States v. Bradley*, 400 F.3d 459, 465 (6th Cir. 2005) ("Having voluntarily and knowingly bargained for a decrease in the number of counts charged against him and for a decreased sentence, [the defendant] cannot now extract two components of that bargain . . . ."); *see also United States v. Magouirk*, 468 F.3d 943, 947 (6th Cir. 2006). "[A] plea agreement allocates risk between the two parties as they see fit. If courts disturb the parties' allocation of risk in an agreement, they threaten to damage the parties' ability to ascertain their legal rights when they sit down at the bargaining table and, more problematically for criminal defendants, they threaten to reduce the likelihood that prosecutors will bargain away counts (as the prosecutors did here) . . . ." *Bradley*, 400 F.3d at 464. This plea agreement is no different. Just as Conway assumed the risk that the district judge might find that he possessed the firearm and give him a longer sentence, so the government bore the risk that the opposite would happen.

III.

For these reasons, we affirm.