**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0399n.06
**No. 17-5144**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Jul 10, 2017<br>DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY |
| JEMAL LILLY, | ) | |
| Defendant-Appellant. | ) | |

BEFORE: BOGGS, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Jemal Lilly pleaded guilty to misprision of a felony after engaging in a fraudulent mortgage refinancing scheme. He requested a six-month probationary sentence, but the district court sentenced him to three months in custody followed by "three months of home incarceration." Because Lilly has not shown that this sentence is procedurally or substantively unreasonable, we affirm the district court's judgment.

I.

A grand jury indicted Lilly and co-conspirator Mark Manuel on three counts of wire fraud and one count of conspiracy to commit wire fraud based on their involvement with an organization called Spiritual Empowerment Equals Economic Development (SEEED). Between November 2009 and July 2010, SEEED purported to offer refinancing services for homeowners

with distressed mortgages, charging an application fee and a $300 membership fee to participate in the program. To attract customers, Lilly and Manuel engaged two mortgage brokerage companies, Home Ownership Possibilities for Everyone (HOPE), and Redemption Funding Group (RFG), to market SEEED. HOPE and RFG solicited fees from individual borrowers under the false pretense that SEEED would provide funds to refinance their mortgages. They targeted individuals with financial problems, particularly those who could not borrow from traditional lenders due to poor credit. In addition to the initial $300 deposit, a number of victims paid SEEED a percentage of the expected closing costs, often between $1,000 and $5,000. Instead of refinancing loans, Lilly and Manuel used the funds solicited by HOPE and RFG for their own benefit. Based on bank records, a probation officer estimated they "defrauded at least one hundred and twenty-seven (127) individual victims."

Lilly initially pleaded guilty to all four counts in a Rule 11(c)(1)(C) plea agreement, which contemplated "that a sentence of probation [wa]s . . . appropriate" for his offenses. Because the agreement had the power to "bind[] the court" to the parties' chosen sentence, *see* Fed. R. Crim. P. 11(c)(1)(C), the district court held a hearing before deciding whether to accept it.

There, the district court asked the parties about Lilly's involvement in Manuel's earlier mortgage scheme, an "identical scheme . . . that resulted in Mr. Manuel's incarceration prior to 2009." "It's my understanding," said the court, "that Mr. Lilly was somehow involved with this SEEED group," or "was somehow a dupe with regard to Mr. Manuel's previous conviction." The government explained that Lilly had played a role in founding SEEED, and "the entity SEEED did exist in that other case," but emphasized that Lilly was never "charged . . . or implicated in [the previous case] as far as anything that we saw." Still, the district court gathered

that once "Mr. Manuel got convicted," Lilly must have realized "Mr. Manuel was a crook" who "had utilized SEEED . . . to rob people." Defense counsel acknowledged that the district court was correct; Lilly was familiar with Manuel's background. To the court, this "ma[d]e[] Mr. Lilly more culpable in this instance" because he knew Manuel had engaged in the same kind of fraud only a few years earlier. Having confirmed that Lilly was aware of Manuel's history, the court concluded "the appropriate sentence to be imposed [should] be substantially different" than the probationary term agreed to by the parties. It rejected the agreement, and Lilly withdrew his guilty plea.

Months later, the United States charged Lilly by information with misprision of a felony in violation of 18 U.S.C. § 4. Again, Lilly pleaded guilty to the charge, agreeing that "[b]etween November 2009 through at least January 2012 [he] became aware that Mark Manuel was fraudulently obtaining money by false representations" through SEEED, but "did not report this to authorities despite knowing that the laws of the United States, including wire and/or mail fraud, were being broken." He also stipulated to pay $105,661 in restitution. This time, the parties memorialized the plea in a Rule 11(c)(1)(B) agreement—the type under which the parties' sentencing recommendation "does not bind the court." Fed. R. Crim. P. 11(c)(1)(B). In exchange for Lilly's plea, the government agreed to "recommend a sentence at the lowest end of the applicable Guideline range" and dismiss the original four-count indictment. Defendant acknowledged in the agreement that "the Court is not bound by the sentencing recommendation" and may ultimately reject it.

Lilly faced a Guidelines range of six to twelve months' imprisonment, with a statutory maximum of three years' imprisonment. *See* U.S.S.G. Ch. 5 Pt. A (sentencing table); 18 U.S.C. § 4. Defendant's sentence fell within Zone B of the Sentencing Table and could therefore "be

satisfied by . . . a sentence of probation" as opposed to a term of imprisonment. *See* U.S.S.G. § 5C1.1(c)(3). As a result, the government's recommendation for "a sentence at the lowest end of the applicable Guideline range" was effectively a recommendation for six months' probation.

The district court accepted defendant's plea and proceeded to allocution at the same hearing. Citing the government's recommendation, defense counsel requested a sentence of six months' probation "with a special condition for home incarceration." The government, for its part, noted the misprision charge may not reflect Lilly's "complete level of involvement" in the underlying fraud, but stood by its recommendation for a sentence at the "lowest end of the . . . Guideline range."

The district court asked once more about "Mr. Lilly's involvement in the previous scheme," explaining its "impression" Lilly may have been "an unwitting participa[n]t[]" in it. Counsel for the government reassured the court that it "pulled the FBI files on that," and found "no evidence that Mr. Lilly knew what was going on" in the earlier case—although he "ultimately did know that Manuel was charged and convicted of that." At most, Lilly's participation in the previous crime "was similar to the involvement of HOPE and . . . RFD . . . , the[] two mortgage companies that were marketing these SEEED mortgages" in the present case. Defense counsel agreed, again elaborating that "when Manuel got out of prison, Mr. Lilly was convinced by Manuel and other people that he surrounded himself with . . . to get back involved with Manuel." "Bad judgment," he added, "no question about it."

Before announcing its sentence, the district court laid out the reasons for its decision. First, it found "the actual information that Mr. Lilly has pled guilty to . . . understates the seriousness of his crime by a magnitude of at least nine," because defendant not only failed to report Manuel's misconduct, "he participated in it" to the tune of more than $100,000 in

misbegotten funds. Second, defendant took those funds from particularly vulnerable victims. "[I]t wasn't like the defendants Mr. Lilly and Mr. Manuel, took $100,000 . . . from Kroger or Meijer." They targeted "people that were struggling desperately to keep their houses," taking "what little money those folks had to try to stave off foreclosure." Third, although the district court found Lilly should serve a custodial sentence, "there does not have to be a long term of incarceration," because unlike Manuel, Lilly's criminal history was minimal. Finally, the court addressed Lilly's willingness to conspire with Manuel, despite knowing he had just served prison time for committing the same kind of offense:

> I am influenced significantly by the fact that Mr. Lilly had previously known that Mr. Manuel was a con man and a cheat because he was involved, at least as I understand it, as an unwitting participant, such as the HOPE mortgage brokers in this case.

> But when Mr. Lilly hooked up with Mr. Manuel after his release from prison for that prior scheme, it seems that he clearly did know what he was getting into. And the fact that $105,000 was diverted to Mr. Lilly's checking account in California shows he certainly was not duped in this scheme.

"So," the court concluded, "I don't think a sentence of probation is sufficient."

Instead, the district court sentenced Lilly to three months' imprisonment, followed by one year of supervised release, "including three months of home incarceration as a special condition" during the supervised-release period. Lilly timely appealed.

## II.

## A.

We review the district court's sentencing determination under the deferential abuse of discretion standard. *United States v. Evers*, 669 F.3d 645, 661 (6th Cir. 2012). The reasonableness of a district court's sentence has both substantive and procedural components, *United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015), and Lilly's challenge—that the

district court erred in finding he knew of Manuel's previous mortgage refinancing operation—is

primarily procedural.[1]  A sentence is procedurally unreasonable if the district court improperly

calculates the Guidelines range, treats the Guidelines as mandatory, ignores the 18 U.S.C.

§ 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to adequately

explain a chosen sentence. *Id.*

Lilly sees this as a case of clearly erroneous facts.  He disputes the district court's finding

that he "had previously known that Mr. Manuel was a con man and a cheat."  But his attorney—

the same representing Lilly on appeal—conceded this point.  At the second plea hearing, counsel

for the government stated there was "no evidence" that Lilly "knew what was going on" in

Manuel's initial scheme, but added that Lilly "ultimately did know that Manuel was charged and

convicted" in the matter.  Lilly's attorney concurred in the government's representation.

"[W]hen Manuel got out of prison," he explained, "Mr. Lilly was convinced by Manuel and

other people" to "get back involved with Manuel" as part of an identical foreclosure-avoidance

scam.  Defense counsel agreed that this demonstrated "[b]ad judgment, no question about it."

Regarding representations made by Lilly's attorney, it is well-settled that "a court may act upon

facts conceded by counsel equally as if established by the clearest proof."  *Gambill v. United

States*, 276 F.2d 180, 181 (6th Cir. 1960).

Confronted on appeal with his admissions before the trial court, defendant modifies this

argument in his reply brief.  There, Lilly claims the district court not only found that he knew of

Manuel's earlier mortgage-refinancing scheme, but also erroneously assumed he actively

---

[1]The government contends that by failing to object after the district court's *Bostic* inquiry, defendant neglected to preserve this claim. *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004)).  "No explicit objection after the *Bostic* inquiry was required here," however, "because [Lilly] had already argued and the district court had explicitly addressed the issue" of his involvement in Manuel's previous crime. *United States v. Kamper*, 748 F.3d 728, 740 (6th Cir. 2014).  Accordingly, the abuse of discretion standard controls.

participated in it. He waived this point by introducing it for the first time in his reply. *See Kamper*, 748 F.3d at 745 n.5. And even if not, it misrepresents the record.

The district court unequivocally found that defendant was no more than an "unwitting participant" in Manuel's earlier crimes, similar to "the HOPE mortgage brokers in this case." It concluded the information he pleaded guilty to "understate[d] the seriousness of his crime by a magnitude of at least nine" not because it believed Lilly participated in that first scheme, but because he participated in the present scheme, as evidenced by his agreement to pay more than $100,000 in restitution. Lilly does not dispute this finding. Indeed, his involvement is demonstrated by his admission that he was "still in contact with leaders or with victims in the case representing that SEEED was a viable option" and "still actively working on behalf of SEEED" while he knew the representations were false and constituted mortgage fraud. And the Guidelines permit the court to consider this type of charged, but dismissed, conduct. *See United States v. Conway*, 513 F.3d 640, 643 (6th Cir. 2008); *see also* U.S.S.G. § 6B1.2(a) ("[A] plea agreement that includes the dismissal of a charge . . . shall not preclude the conduct underlying such charge from being considered under the provisions of § 1B1.3 (Relevant Conduct) in connection with the count(s) of which the defendant is convicted").

Lilly's remaining arguments are unpersuasive. The court was not obligated to make findings regarding a matter that was not "controverted," Fed. R. Crim. P. 32(i)(3)(B), and the government was not obligated "to establish at sentencing a factual issue which is not in dispute." *United States v. Stafford*, 258 F.3d 465, 475 (6th Cir. 2001) (internal quotation marks omitted). Ignoring one's own on-the-record admissions is not a feasible means of demonstrating procedural error. Accordingly, defendant has failed to show that his sentence was procedurally unreasonable.

B.

Defendant characterizes his sentence as "substantively inappropriate" in a single sentence in his reply brief. Lilly may not leave it to us "to put flesh on the bones" of his "skeletal," unpreserved substantive-reasonableness argument. *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) (citation omitted); *see also Kamper*, 748 F.3d at 745 n.5. To the extent that he does, Lilly's complaint seems to be that he must serve half of his six-month sentence in prison instead of serving all of it at home. However, in addition to pleading guilty to misprision of a felony, Lilly personally benefitted to the tune of more than $100,000 at the expense of vulnerable homeowners. Mere disappointment with his sentence "is not a cognizable basis to appeal, particularly where the district court followed the mandate of section 3553(a) in all relevant respects." *United States v. Jackson*, 466 F.3d 537, 540 (6th Cir. 2006). Defendant has not shown his within-Guidelines sentence is substantively unreasonable.

III.

For the foregoing reasons, we affirm the district court's judgment.