NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0469n.06

Case No. 20-6174

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED** |
| | ) | Oct 14, 2021 |
| Plaintiff-Appellee, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| JERMAINE WEBB, | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| Defendant-Appellant. | ) | TENNESSEE |
| | ) | |

BEFORE: SUTTON, Chief Judge; McKEAGUE and WHITE, Circuit Judges.

SUTTON, Chief Judge. Jermaine Webb pleaded guilty to possessing a firearm as a convicted felon. The district court enhanced his base offense level after finding he used a gun in an altercation at his ex-girlfriend's house the night before his arrest. Because the district court reasonably found that this incident counts as part of the "same course of conduct" as his gun possession the next day, we affirm.

On September 3, 2018, Webb approached his ex-girlfriend's residence and confronted her new boyfriend, Corey Pittman, with a gun. Witnesses saw Webb fire a handgun at Pittman. Then Webb said, "what's up now," and drove away in an orange Dodge Avenger. R.76 at 5. Police responded to the scene. They obtained a warrant for Webb's arrest and began watching his home.

The next day, Webb got back into his car—the same 2008 Dodge Avenger—and was stopped by police. During the stop, officers saw a pistol, which turned out to be a different gun from the one he had fired the night before. Officers arrested Webb and seized his pistol, which was loaded.

Based on the second incident, the one on September 4, a federal grand jury indicted Webb for one count of illegally possessing a firearm as a convicted felon. *See* 18 U.S.C. §§ 922(g)(1), 924(a). The State of Tennessee separately brought charges for aggravated assault with a deadly weapon and reckless endangerment for his September 3 conduct but ultimately dismissed the charges.

Webb pleaded guilty to his federal felon-in-possession charge. At sentencing, the district court found that Webb also possessed a firearm on September 3 and adopted the presentence report to that effect. It then determined that the September 3 incident was relevant conduct to his arrest on September 4. As a result, the district court enhanced the base offense level by four levels under U.S.S.G. § 2K2.1(b)(6)(B). That increased Webb's advisory guidelines range from 33–41 months to 51–63 months. The court nonetheless varied downward significantly and sentenced Webb to 36 months.

On appeal, Webb claims that the district court erred in applying the enhancement, submitting that his September 3 actions do not count as relevant conduct when it comes to his illegal gun possession on September 4. A few ground rules accompany this claim. A prior incident counts as relevant conduct if it was "part of the same course of conduct" or a "common scheme or plan" as the underlying conviction. U.S.S.G. § 1B1.3(a)(2). The prior incident must be "sufficiently connected or related to" the underlying conviction such "that they are part of a single episode, spree, or ongoing series of offenses." *Id.* § 1B1.3 cmt. n.5(B)(ii). Three factors weigh in

the balance: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.* The government must show by a preponderance of the evidence that the prior incident constituted relevant conduct. *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018). As a general matter, we review the district court's factual findings for clear error and its legal interpretations with fresh eyes. *United States v. Hodge*, 805 F.3d 675, 678 (6th Cir. 2015). While there is some disagreement within the circuit over the question whether the application of this guideline to a given fact pattern receives deferential or fresh review, *compare Amerson*, 886 F.3d at 573 (fresh review), *with United States v. Kappes*, 936 F.2d 227, 229 (6th Cir. 1991) (clear error review), the standard of review makes no difference here.

Two of the three factors—the time interval and the similarity of the offenses—firmly favor the government. Incidents separated by as much as nine months have satisfied the timing consideration. *See Amerson*, 886 F.3d at 574; *United States v. Phillips*, 516 F.3d 479, 483–84 (6th Cir. 2008). If a nine-month gap between incidents may suffice, this small gap in time—less than 24 hours—strongly supports the enhancement.

Webb's conduct on September 3 also was similar to, if not materially identical to, his conduct on September 4. In assessing similarity, we look "beyond the general nature of the offense"—namely, "unlawfully possessing a gun," *Amerson*, 886 F.3d at 578—to other shared features of the conduct: "common victims, common offenders, common purpose, or similar modus operandi," *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996); *see also Phillips*, 516 F.3d at 485 n.5. When two incidents "took place at the same location," that usually shows they are "connected." *United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016).

These two incidents shared plenty of similarities. Webb possessed the same kind of firearm both times, a handgun. And he used the same Dodge Avenger in both incidents. That he possessed

3

different guns on each occasion and that he fired the gun in one instance but not the other does not diminish the similarity. Because both incidents "bear[] considerable similarity" as gun possessions that occurred in "the same place," the similarity factor is met. *United States v. Conway*, 513 F.3d 640, 643 (6th Cir. 2008); *see also United States v. Fisher*, 824 F. App'x 347, 359–60 (6th Cir. 2020) (holding similarity was "strong" for possessions of different guns in the same house).

The brevity of time between the two incidents, it is true, left little time to establish the third factor: the regularity of the conduct. Just one "other instance of conduct" usually will not suffice to establish regularity. *Amerson*, 886 F.3d at 574. One day rarely will leave enough time to establish three or more forms of relevant conduct. But this reality does not undermine the district court's conclusion that the September 3 incident counts as relevant conduct.

With such regularity missing, "there must be strong similarity and close temporal proximity to make up for it," *United States v. Bowens*, 938 F.3d 790, 800 (6th Cir. 2019), and that is what we have here. *See also United States v. Gales*, 137 F. App'x 875, 877–78 (6th Cir. 2005) (holding the standard met with "compelling similarity" and "a brief time interval" of two months). We have routinely observed that the "contemporaneous, or nearly contemporaneous, possession of uncharged firearms is . . . relevant conduct in the context of a felon-in-possession prosecution." *Phillips*, 516 F.3d at 483; *Amerson*, 886 F.3d at 574–75; *Fisher*, 824 F. App'x at 360 (all quoting *United States v. Powell*, 50 F.3d 94, 104 (1st Cir. 1995)). Webb's case fits comfortably within these precedents, as his uncharged firearm possession occurred in the same car and within 24 hours of the charged conduct.

*Amerson*, *Hill*, and *Bowens* do not require a different conclusion.

*Amerson* held that a defendant's involvement in a shooting three and a half months before his arrest for illegal gun possession was not relevant conduct. 886 F.3d at 570, 578. But Webb's

4

conduct involved far more temporal proximity, which is decisive here. *Amerson* contemplated as much, noting that "contemporaneous, or nearly contemporaneous, possession" *would* be strong enough to overcome a lack of regularity and the "minimal similarity" of two incidents involving gun possession. *Id.* at 574–75, 577–78. And Webb's two incidents were more similar in nature, as they occurred in the same car instead of "different locations." *Id*. at 577.

*Hill* held that an earlier drug transaction was not relevant to a later drug transaction arrest. 79 F.3d at 1485. But *Hill* limited its holding to cases in which "two isolated drug transactions are separated by more than one year . . . [and] the sole similarity [is] that both transactions involved the same type of drug." *Id.* at 1484. Webb fits within the exceptions, not the *Hill* holding.

*Bowens* held that an uncharged gun possession was not relevant conduct to an arrest for illegal gun possession four months later. 938 F.3d at 798–99. In addition to "weak" temporal proximity and "no regularity," the court found weak similarity because "[t]here was nothing similar about Bowens' separate acts of possession *other* than the general nature of the offense," as one possession was in a car and the other was in his home. *Id.* at 800. Webb's conduct was closer in time and bore more similarity.

Webb's suggestion that the September 3 incident was a *shooting* and thus cannot be classified as a mere gun *possession* overlooks precedent. In *Amerson*, our court also had before it one incident that was a shooting and another that was an arrest for gun possession. And we did not hesitate to characterize the two incidents as "two illegal possessions." *Amerson*, 886 F.3d at 571, 574. Shooting a gun necessarily entails possessing it.

Webb insists that it is not clear from the record that both incidents occurred in the same car. But that argument overlooks his own testimony. The presentence report and sentencing transcript show that Webb drove his orange Dodge Avenger during the September 3 incident.

Although the presence report says generically that on September 4, the police observed Webb get into a "vehicle . . . parked in front of his residence," R.76 at 6, Webb testified that he was arrested in "[his] car . . . the car in [his] name," R.81 at 58. Webb owned one vehicle: a 2008 Dodge Avenger. The government argued to the district court, notably, that both incidents occurred in "the same vehicle," *id.* at 18, and Webb never argued that the two incidents occurred in different cars.

That Webb had different guns on September 3 and 4 does not upend this analysis either. In *Conway*, possession of a sawed-off shotgun was still relevant conduct when it came to a conviction for being a felon in possession of nine-millimeter and assault rifle ammunition. 513 F.3d at 643. And in *Gales*, the illegal sales of a Mossberg, a Glock, and a Browning two months apart were all "part of the same course of conduct—namely, the illegal possession of firearms." 137 F. App'x at 876–77.

*United States v. Howse*, 478 F.3d 729 (6th Cir. 2007), and *United States v. Settle*, 414 F.3d 629 (6th Cir. 2005), do not alter this conclusion either. Both cases held that for a sentencing enhancement to apply *without* reliance on U.S.S.G. § 1B1.3(a)(2), the government must show a "clear connection" between the involved firearms (when they are different in the two incidents). *Howse*, 478 F.3d at 731–33; *Settle*, 414 F.3d at 632 n.2, 634. But Webb only claimed that the district court erred by ruling that the September 3 incident "constituted relevant conduct under the . . . three-factor weighing test" required by § 1B1.3(a)(2). Appellant's Br. at 7. And a later amendment to the Sentencing Guidelines commentary clarified that whether the relevant sentence enhancement in § 2K2.1 could apply for an earlier offense that involved a different firearm turned on the "relevant conduct" standard of § 1B1.3(a)(2). U.S.S.G. § 2K2.1 cmt. n.14(E)(ii).

That the State dropped Webb's state-law charges for the incident on September 3 does not prohibit the United States from treating the incident as relevant conduct for federal sentencing purposes. "[I]n determining relevant conduct, a court may consider a broad range of information, including uncharged crimes, crimes where charges have been dismissed, and crimes for which the defendant has been acquitted." *United States v. Rios*, 830 F.3d 403, 440 (6th Cir. 2016) (quotation omitted).

We affirm.