NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0469n.06

Case No. 23-5830

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,</td><td>)</td><td rowspan="11"></td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Plaintiff-Appellee,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>v.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>BRANDY SLONE,</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
<tr><td>    Defendant-Appellant.</td><td>)</td></tr>
<tr><td></td><td>)</td></tr>
</table>

FILED
Nov 25, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

O P I N I O N

Before: CLAY, WHITE, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Brandy Slone pleaded guilty to conspiracy to distribute methamphetamine. The district court sentenced him to 190 months' imprisonment based in part on a two-level enhancement for possession of a firearm in furtherance of drug trafficking activity. Slone's sole argument on appeal is that applying this enhancement was procedurally unreasonable. Because it was not, we AFFIRM.

**I.**

Brandy Slone pleaded guilty to conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine. Law enforcement used a confidential informant to conduct five controlled meth buys from Slone in 2022. In May, the informant placed a video recording device in Slone's living room to capture Slone's drug sales and related activity.

During one of the informant's buys, she told Slone she wanted to buy a firearm. Slone told her that he could sell one to her for $300. So a few days later, the informant returned to Slone's home to buy more meth and the firearm. And though video only captures the two walking into his bedroom, the informant later told her handler that Slone retrieved the firearm from a drawer in his bed. The video shows that as the two left his room, the informant held the firearm and asked Slone what bullets it needs. He replied that it was a nine-millimeter and offered to go outside to show her that "it would not hang." The informant's handler testified that "hang" generally refers to a gun malfunctioning. The informant discussed with Slone that the last time she bought from him, her buy "was an eight-ball short." Slone asked the informant "how much clear" the informant wanted. R. 65, Sentencing Hr'g Tr. p.29, PageID 260. According to the investigating officer, "clear" is a "slang term . . . used for methamphetamine." *Id.* Slone told the informant that he only had 2.5 grams—less than an eight-ball—and stated that the "dope" was "laying in the nightstand." *Id.* at pp.29–30, PageID 260–61. Slone then "look[ed] for quite a while to find methamphetamine, but never did come up with any," so the informant left with only the firearm. *Id.* at p.32, PageID 263.

The video does not show the firearm change hands. But before the buy, law enforcement searched the informant and her car to ensure she did not have her own gun. The FBI Task Force Officer responsible for the informant testified that there was no sign she either stopped anywhere or met with anyone else before visiting Slone. After the buy, the informant met with the officer and confirmed that she and Slone were alone during the transaction, and that she bought the gun for $300. She then relinquished a nine-millimeter pistol to the officer.

On November 3, 2022, law enforcement executed a search warrant at Slone's home. They found over 250 grams of meth, about eight grams of fentanyl, a bag of psilocybin mushrooms, an

assortment of pharmaceuticals, and drug paraphernalia. Slone directed law enforcement to the location of drugs in his home. In an interview with law enforcement, Slone acknowledged that he understood the drug distribution charge but denied possessing or selling a firearm given his felon status.

A grand jury indicted Slone on eight counts: seven related to drug trafficking under 21 U.S.C. § 846 and § 841(a)(1) and one for knowingly possessing a firearm as a felon under 18 U.S.C. § 922(g)(1). Slone pleaded guilty to a single count of conspiracy to distribute methamphetamine under § 846. That count alleged a two-year-long conspiracy to sell methamphetamine: It alleged that Slone "conspire[d] with others to knowingly and intentionally distribute 500 grams or more . . . of methamphetamine" "[i]n or about November 2020, the exact date unknown, and continuing through on or about November 3, 2022." R. 12, Indictment, p.1, PageID 27. The Government dropped all other charges, including the gun charge. Slone reserved the right to appeal his sentence.

The presentence report ("PSR") recommended a two-offense-level enhancement based on the alleged firearm sale. Slone objected. At sentencing, the government offered testimony from the Task Force Officer about the sale and presented the associated videos. Though Slone cross-examined the officer, he presented no evidence of his own. Before dismissing the officer, the court confirmed that he searched both the informant and her vehicle before the sale, and that the officer could account for her activity throughout the entire sale. Based on the officer's affirmation on both points, the court overruled Slone's objection.

The court found that the government had "clearly proven" the firearm sale took place, which shifted the burden to Slone to show it was "clearly improbable" that the sale was connected to the underlying offense. But the firearm purchase originated from the drug sales during which

3

the informant talked about looking for a gun. And on the date of the firearm sale, the informant tried to buy meth and Slone tried to provide it. So the court concluded the firearm sale was "part and parcel within the exact transactional relationship that centers on the methamphetamine."

After applying the two-level enhancement and considering other adjustments not at issue in this appeal, Slone's total offense calculation was thirty-three. Because of Slone's category IV criminal history, his advisory guidelines range was 188 to 235 months' imprisonment including a mandatory minimum of 120 months. The court sentenced Slone to 190 months. Slone timely appealed.

## II.

Slone makes one argument on appeal. He contends that the district court incorrectly applied the two-level enhancement for firearm possession. A claim that the court incorrectly calculated the guidelines range is a claim of procedural unreasonableness. *United States v. Allen*, 93 F.4th 350, 355 (6th Cir. 2024). We review the district court's legal conclusions de novo but its factual findings for clear error. *United States v. Shanklin*, 924 F.3d 905, 919 (6th Cir. 2019). We also "accord due deference to the district court's determination that the firearm was used or possessed in connection with the other felony." *Id*. (internal quotation marks omitted). Although the government bears the burden of showing that the enhancement applies by a preponderance of the evidence, the finding of a nexus between the underlying crime and the firearm is necessarily a "fact-specific" inquiry better handled by the district court. *Id.* (internal quotation marks omitted); *see also Buford v. United States*, 532 U.S. 59, 63–64 (2001) (noting that the "special competence" of the district court in applying guidelines to facts makes deferential review appropriate). Thus, this court will only reverse the sentence if a review of the entire record leaves us "with the definite

and firm conviction that a mistake has been committed." *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (internal quotation marks omitted).

**A.**

Slone claims his sentence is procedurally unreasonable based on two facts: (1) the video of the interaction between him and the informant does not show a gun in Slone's possession, and (2) the video does not show any drugs involved in that transaction. Appellant Br. at 7.

The Sentencing Guidelines provide a two-level enhancement if "a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). For the enhancement to apply, "the government must establish that (1) the defendant actually or constructively possessed the weapon, and (2) such possession was during the commission of the offense." *West*, 962 F.3d at 187 (internal quotation marks omitted). Constructive possession is "the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Id.* (internal quotation marks omitted). The government must prove possession occurred during the "relevant conduct" of the offense. *Id.* But the defendant need not possess the weapon during the commission of the actual offense of conviction. *Id.* Rather, the Guidelines define "relevant conduct" in § 1B1.3(a)(1)(B) as "all acts and omissions . . . that were [] (i) within the scope of the . . . criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B).

Once the government shows that the defendant possessed a weapon during the relevant conduct, a presumption arises that the weapon was connected to the offense. *West,* 962 F.3d at 188. To overcome the presumption, the defendant must show that it is "clearly improbable" that a connection exists. *Id*. (quoting U.S.S.G. § 2D1.1 cmt. n.11(A)).

The district court found Slone was in constructive possession of the firearm because he gave it to the informant. The informant's handler testified that he searched her before and after meeting Slone and that she met with no one else. The video also shows significant "gun talk." Slone offered to walk outside and show her that it will not "hang." The informant also asked Slone what kind of bullets the gun required. And he responds that it was a nine-millimeter. This evidence led the court to conclude there was a firearm transaction. And if there was a firearm transaction, Slone "clearly had to posses[s] it" because he gave it to the informant. At the very least, he "obviously accessed" the drawer in his bed where the firearm was; at a minimum, this shows constructive possession.

After deciding Slone possessed the firearm, the court next concluded that it was connected to the relevant conduct. First, the firearm sale originated during a prior drug transaction where Slone promised to sell a firearm to the informant for $300. The deal brokered during this earlier transaction came to fruition less than a week later. The informant also went to Slone's house intending to buy more meth. Not only did she intend to buy more—Slone intended to sell it. Slone asked the informant "how much clear" the informant wanted and said that "dope" was in the nightstand. R. 65, Sentencing Hr'g Tr. pp.29–30, PageID 260–261. Slone then "look[ed] for quite a while to find methamphetamine," and the informant left without methamphetamine only because Slone could not find it. From this, the court concluded that the firearm sale was "sort of an add-along activity that originated" during the prior drug deal, and that Slone possessed the gun while conspiring to sell more methamphetamine to the informant. So the defendant failed to show that it was clearly improbable that the two buys were connected.

Between the video and the officer's testimony, we cannot say the record leaves us "with the definite and firm conviction" that a mistake was made. *West*, 962 F.3d at 187 (internal

6

quotation marks omitted). The court had ample evidence showing that Slone possessed a firearm and sold it to the informant as part of a series of meth sales.

Slone asserts that the government didn't meet its burden because the video didn't show him possessing the gun. Appellant Br. at 7. We disagree. Possession may be actual or constructive. *West*, 962 F.3d at 187. And constructive possession merely requires that Slone exercise dominion or control over the firearm or its location. *Id.* The video of the informant leaving Slone's bedroom with the firearm, coupled with the officer's testimony that she did not have her own firearm before entering the house, provides sufficient evidence that Slone was the source of the firearm. And then there is the "gun talk." Slone explained what type of firearm it was—the same type of firearm the informant relinquished to law enforcement—and offered to test it to prove it wouldn't malfunction. This conversation shows that Slone first had the firearm and then gave it to the informant. Altogether, it was not a clear error for the district court to conclude that Slone either actually possessed the firearm or exercised control over its location (his bedroom) to give it to the informant.

Slone also emphasizes that the government dismissed his firearm charge as part of his plea agreement. Appellant Br. at 7. According to him, the dismissed charge is evidence he did not possess the firearm. *Id.* But the government's dismissal of Slone's firearms charge is not evidence that Slone did not possess the gun. It is, perhaps, evidence that the government had strategic reasons for not moving forward with the charge. Indeed, this court has expressly allowed sentencing courts to consider conduct underlying charges dismissed based on a plea agreement as evidence against the defendant. *United States v. Conway*, 513 F.3d 640, 645 (6th Cir. 2008) (explaining that plea agreements only bar the government from seeking to convict a defendant

based on dismissed counts, "not from using the conduct underlying those counts to increase [the defendant's] sentence").

Next, Slone argues that the video does not show any drug activity during the alleged firearms sale. Appellant Br. at 7. He asserts that because there were no drugs in his residence at the time of the alleged firearm-sale, there is no connection between the firearm and his drug trafficking activity. *Id.* at 8. True, Slone did not sell any drugs during the firearm sale. But he did not have to. The government must only show the firearm sale occurred during "relevant conduct." *West*, 962 F.3d at 187; *see also* U.S.S.G. § 1B1.3(a)(1)(B).

Here, Slone's firearm sale was within the scope of his drug trafficking. As part of his plea agreement, Slone admitted that he began obtaining and selling meth in November 2020. And that he made at least five separate sales to the confidential informant in 2022. Discussion of the firearm sale originated during one of those drug sales. The informant went to Slone's house to buy both a firearm and meth. And Slone planned to sell the informant both. Indeed, during the gun sale, Slone expressly discussed selling "clear" and "dope" to the informant. R. 65, Sentencing Hr'g Tr pp.29–30, PageID 260–261. That he could not find the drugs does not change that the two transactions were necessarily intertwined.

Because the district court had sufficient evidence to conclude Slone (1) actually or constructively possessed the firearm and (2) possessed it during the commission of the offense, it committed no error. *West*, 962 F.3d at 187. So Slone's two-level enhancement was procedurally reasonable.

### III.

For the reasons set forth above, we AFFIRM Slone's sentence.